**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONELL L. PRINCE, | Civil Action No.: 09-5429  (JLL) |
| Plaintiff, | |
| v. | |
| THOMAS AIELLOS, et al., | **OPINION** |
| Defendants. | |

**LINARES,** District Judge.

This matter comes before the Court by way of seven motions to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court has considered the submissions made in support of and in opposition to the instant motions.  No oral argument was heard.  Fed. R. Civ. P. 78.  Based on the reasons that follow, the foregoing motions are **granted in part and denied in part.**

### BACKGROUND

**1.      Procedural Background**

Plaintiff, proceeding pro se in this matter, commenced the instant cause of action on October 23, 2009.  An Amended Complaint was filed in February 2010.  A motion to dismiss Plaintiff's Amended Complaint was filed by Defendant Bergen Regional Medical Center on April 5, 2010. The motion was joined by Defendants E. Fahey and Care Plus NJ, Inc. on April 16, 2010.  On April

23, 2010, Defendants' motion to dismiss the complaint was granted.  In doing so, the Court noted that Plaintiff had failed to oppose said motion and that Plaintiff's § 1983 claims as against the foregoing defendants were barred by the two-year statute of limitations given that "no wrongful act by moving Defendants is alleged to have occurred later than the end of 2005, well over two years prior to the filing of the original complaint in this case." See Docket Entry No. 40 at 3.

On May 7, 2010, Plaintiff filed a motion to vacate this Court's April 23, 2010 decision pursuant to Federal Rule of Civil Procedure 60(b)(6).  Plaintiff also requested leave to amend the Amended Complaint.  On July 12, 2010, this Court granted Plaintiff's motion to vacate and granted Plaintiff's request for leave to file a Second Amended Complaint. In doing so, the Court also denied, without prejudice, all motions to dismiss the Amended Complaint which were pending at that time. The Second Amended Complaint was filed on the Court's docket in August 2010.  Seven motions to dismiss the Second Amended Complaint were subsequently filed and are now before the Court.

## 2.      Second Amended Complaint

The Second Amended Complaint alleges the following relevant facts, all of which are accepted as true for purposes of the instant motion.

Plaintiff has a history with the Hackensack Police Department and Municipal Court dating back to the early 1990s which stems from an automobile accident and his attempts to hold certain police officers, paramedics and others accountable in connection with said accident.  (Compl., ¶ 19(a)).  In particular, Plaintiff alleges that he was involved in an automobile accident during that time period and sustained injuries as a result.  The paramedic and police officer who reported to the scene of the accident, upon realizing that Plaintiff was black, questioned whether or not he had actually

been injured.  (Compl., ¶ 19(a)).  Believing that Plaintiff was faking his injuries, the police officer falsified the accident report to blame the accident on an unknown third-party. (Compl., ¶ 19(a)).  At the time, the Hackensack Police Department and Municipal Court refused to allow Plaintiff to file any complaints related to this accident. (Id.).  To the contrary, Hackensack Internal Affairs Police Captain Smith warned Plaintiff to back off otherwise "things could happen" to him. (Id.).  Plaintiff further alleges that "coincidentally some of their threats came true" when the attorney representing him in a related personal injury matter secretly agreed with his adversaries to handle Plaintiff's claims improperly, which ultimately led to the loss of his medical and income continuation benefits. (Compl., ¶ 19(b)).

On May 23, 2005, while Plaintiff was "coincidentally" working on an appeal in connection with his automobile accident, certain members of the Hackensack Police Department illegally entered his apartment.  (Compl., ¶¶ 19(c), 20(a)).  According to the Complaint, four plain clothes narcotics police officers from the Hackensack Police Department (Thomas Aiellos, W. Inglima, A. Gutierrez and A. Ferraoili), who claimed they were chasing a suspect in the area, came upon Plaintiff's apartment and noticed that the front door was ajar. (Id.).  Without knocking on the door or announcing themselves as police officers, said officers attempted to enter Plaintiff's apartment, at which time Plaintiff grabbed his gun to protect himself and turned on the lights. (Id.).  Plaintiff later found out that, following the May 23, 2005 incident, Lt. Lee from the Hackensack Police Department had called a psychiatric hotline screener associated with Care Plus of NJ, Inc. and/or the Bergen Regional Medical Center Psychiatric Unit and conveyed certain information concerning Plaintiff's behavior that evening: he had threatened to kill himself; he had his refrigerator chained up; he fought "imaginary people"; and he was generally delusional. (Compl., ¶ 22(a)).

3

Although the May 23, 2005 incident ended uneventfully, the officers returned to Plaintiff's apartment the following night and asked Plaintiff to go down to the police station to discuss what had happened the night before. (Compl., ¶ 21). Plaintiff complied with their request and voluntarily went to the police station. (Id.). Although Plaintiff was not placed under arrest, he was led to a holding cell. (Id.). Plaintiff asked for a telephone or an attorney but was told that he was not entitled to either because he was not under arrest. (Id.). Plaintiff was then taken to the Bergen Regional Medical Center for a psychiatric evaluation pursuant to a purported Court Order. (Id.). From May 24, 2005 to May 25, 2005, Plaintiff remained at the Bergen Regional Medical Center, despite no formal charges having been filed against him. (Id.). During this time, he was "hand cuffed to [a] bed and under police guard." (Compl., ¶ 22(c)). He was interviewed by Defendant E. Fahey, an employee of Care Plus NJ, Inc., at the Bergen Regional Medical Center on May 25, 2005. (Compl., ¶ 24). The Second Amended Complaint alleges that some of the notes taken by E. Fahey of Plaintiff's account of the May 23, 2005 incident were fabricated, altered and later destroyed. (Compl., ¶ 24). During his stay at the Bergen Regional Medical Center, Plaintiff was treated by Defendant Dr. Schiffman, who falsely claimed to be having difficulty locating the relevant police reports and asked Plaintiff to sign a voluntary committal form so as to prolong his stay. (Compl., ¶ 25(b).

On or about May 25, 2005, Plaintiff was charged with several crimes in connection with the May 23, 2005 incident. (Compl., ¶ 23(a)). The criminal complaint was filed by Sergeant Thomas Aiellos and charges were brought by the Bergen County Prosecutor.   (Compl., ¶¶ 23(b) and (f)). Plaintiff alleges that the criminal complaint and/or investigation report filed by Sgt. Aiellos were backdated to May 24, 2005 "to cover up what [had] happened during the first (19) nineteen hour[s]

4

[Plaintiff] was in police custody at the hospital." (Compl., ¶ 23(c)).  In connection with these charges, Plaintiff was transferred to the Bergen County Jail on June 13, 2005 and was released on August 30, 2005. (Compl., ¶¶ 25(c), 26, 27(a)).  While at the Bergen County Jail, Plaintiff was denied his regular medication and was, instead, administered an antipsychotic medication, which caused him to suffer adverse physical reactions. (Compl., ¶ 26).

Plaintiff sent a letter to the Attorney General's Office on October 25, 2005 concerning the May 23, 2005 incident. (Compl., ¶ 27(a)).  Plaintiff was then referred to the Bergen County Prosecutor's Office. (Id.).  He forwarded a letter to the Bergen County Prosecutor's Office in November 2005. (Id.). On November 15, 2005, the charges filed against Plaintiff were downgraded by Prosecutor Nicholas Ostuni and were remanded to the Hackensack Municipal Court. (Compl., ¶ 27(b)).  In particular, the Second Amended Complaint alleges that charges of aggravated assault on a police officer and possession of a weapon for unlawful purposes were downgraded to simple assault and disorderly conduct. (Compl., ¶ 27(b)).

Plaintiff visited the Hackensack Municipal Court on September 12, 15 and 18, 2006 in order to file his own criminal charges against various police officers. (Compl., ¶ 28(a)). Plaintiff was told by the Court Administrator, Janice Behnke, that all criminal complaints must enclose the applicable police reports and that his allegations should first be investigated by the internal affairs unit of the police department. (Compl., ¶ 28(b)). At some point thereafter, Plaintiff visited the Bergen County Administrative Offices for the Municipal Courts to complain about his treatment at the Hackensack Municipal Court. (Compl., ¶ 29(b)). He asked if he could file a criminal complaint at that office, but was told that he could not. (Id.).

On or about February 22, 2007, Plaintiff attempted to file criminal complaints with the

5

Bergen County Prosecutor's Office alleging "serious crimes and attempts to cover up same by a number of Hackensack Police officers and others . . ." but was not permitted to do so. (Compl., ¶ 27(c)).  On February 26, 2007, Plaintiff sent a second letter to the Attorney General's office wherein he questioned why his October 25, 2005 letter was never responded to and reiterated his prior complaints concerning his arrest and, in particular, actions by certain members of the Hackensack Police Department, members of the hospital staff, members of the Bergen County Prosecutor's Office, and employees of the Hackensack Municipal Court. (Ex. K to Plaintiff's Original Complaint).

The Complaint further alleges that on September 13, 2007, during a hearing in connection with Plaintiff's criminal case, Sgt. Aiellos testified falsely concerning the timing of Plaintiff's arrest. (Compl., ¶ 23(d)).  Ultimately, all criminal charges against Plaintiff were dismissed on October 25, 2007 by the Honorable Roy J. McGeady, P.J.M.C. (Compl., ¶ 2).

In light of the foregoing, Plaintiff commenced the instant cause of action on October 23, 2009, alleging various claims pursuant to 42 U.S.C. § 1983[1] against numerous defendants, including but not limited to: (1) the Hackensack Police Department and several of its officers, (2) the Hackensack Municipal Court and several of its employees, (3) the Bergen County Jail and several of its employees, (4) the Bergen County Prosecutor and staff, (5) the Bergen Regional Medical Center and several of its staff members, and (6) the Superior Court of New Jersey, Bergen Vicinage,

---

[1] To the extent Plaintiff's Second Amended Complaint should be construed as alleging a claim pursuant to 18 U.S.C. § 245, such claim would fail because "no private right of action exists" under that statute. Pope v. Thornburgh, 978 F.2d 744 (D.C. Cir. 1992). In addition, the Court notes that the Second Amended Complaint makes reference to certain "state claims" in the context of asserting the basis of this Court's jurisdiction over such claims. See Compl., ¶ 3(b).  The Court does not, however, construe the Second Amended Complaint as actually asserting any substantive state law claims.

6

Municipal Division.[2]  This Court's jurisdiction over Plaintiff's Second Amended Complaint is premised on 28 U.S.C. § 1331.

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997).  Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  With this framework in mind, the Court tuns now to Defendants' motions.

---

[2] Plaintiff also attempts to sue the Attorney General of the State of New Jersey.  There is no indication on the Court's docket that service of process on the Attorney General of the State of New Jersey has been properly effectuated, nor does it appear that the Attorney General has filed a responsive pleading or joined in the motions to dismiss currently pending before the Court.  To the extent Plaintiff chooses to file a Third Amended Complaint to cure the pleading deficiencies in his conspiracy and/or equal protection claim and chooses to assert such claim(s) as against the Attorney General, Plaintiff shall take note of Federal Rule of Civil Procedure 4(m) which provides that: "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

**DISCUSSION**

Seven motions to dismiss have been filed and are currently pending before the Court.  The Court construes Plaintiff's Second Amended Complaint as asserting the following claims for relief, all pursuant to § 1983: (1) false imprisonment, (2) false arrest, (3) malicious prosecution, (4) conspiracy to commit malicious prosecution, and (5) equal protection.  Plaintiff appears to assert all claims as against all Defendants to this matter.  With this in mind, the Court turns now to Defendants' motions.

**1.      Sovereign Immunity**

The Superior Court of New Jersey, Bergen Vicinage, Municipal Division and the Hackensack Municipal Court move to dismiss the Second Amended Complaint on the basis that they are entitled to sovereign immunity.  It is well established that a State cannot be held liable under § 1983 both because it is not a "person" under the statute and because Eleventh Amendment immunity bars the court from exercising jurisdiction over such an action.  See Callahan v. City of Philadelphia, 207 F.3d 668, 669 (3d Cir. 2000). "As part of the judicial branch of the State of New Jersey, a New Jersey Municipal Court is entitled to sovereign immunity." Hernandez v. Switzer, 2009 WL 4730182, at *3 (D.N.J. Dec. 4, 2009).  Plaintiff concedes that the foregoing defendants are entitled to Eleventh Amendment sovereign immunity.  See Docket Entry No. 88-5 at 10.  Accordingly, Plaintiff's § 1983 claims are dismissed with prejudice as to the Superior Court of New Jersey, Bergen Vicinage, Municipal Division and the Hackensack Municipal Court.[3]

---

[3]  See also Briggs v. Moore, 251 Fed. Appx. 77, 79 (3d Cir. 2007) ("The New Jersey Superior Court is not a 'person' capable of being sued under § 1983").

**2.      Municipal Liability**

A municipality can only be liable under § 1983 if a plan, policy or custom that it initiated violated a constitutional right.  See Monell v. Dept. of Social Servs., 436 U.S. 658, 690 (1978).  Although Plaintiff asserts § 1983 claims against the Hackensack Police Department,[4] no such plan, policy or custom has been alleged by Plaintiff here.  Plaintiff's generalized allegation that the Hackensack Police Department's "customs and policy's [sic] lead [sic] to the deprivation of plaintiff's constitutional rights" is a legal conclusion draped in the guise of a factual allegation and thus does not benefit from the presumption of truthfulness.  See, e.g., In re Rockefeller Center Props., Inc. Secs. Litig., 311 F.3d 198, 216 (3d Cir. 2002).  The Second Amended Complaint contains absolutely no factual content which allows the Court to draw the reasonable inference that the Hackensack Police Department may be held liable under § 1983.  See generally Iqbal, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Plaintiff's § 1983 claims are therefore dismissed with prejudice as to the Hackensack Police Department.

**3.      Immunity from Suit Under State Law**

Defendants E. Fahey, Care Plus NJ, Inc., the Bergen Regional Medical Center and Dr. Schiffman all move to dismiss Plaintiff's Second Amended Complaint on the basis that they are immune from suit based on a New Jersey state statute.  "A state statute that creates immunity from

---

[4]  "[W]e treat the municipality and its police department as a single entity for purposes of section 1983 liability." Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n. 4 (3d Cir.1997).

suit under state law does not define the scope of immunity from suit under federal law." Bates v. Paul Kimball Hosp., 346 Fed. Appx. 883, 885 (3d Cir. 2009) (concluding that "District Court erred in finding that Appellees are immune from suit under N.J.S.A. 30:4-27.7, and dismissing Bates' amended complaint [containing a § 1983 claim] on that basis.") (citing Bolden v. SEPTA, 953 F.2d 807, 818 (3d Cir.1991)).  Because all claims asserted in this matter are asserted under federal law, namely § 1983, the Court declines to dismiss such claims on the basis of an immunity created by state law.  See, e.g., Mancini v. Lester, 630 F.2d 990, 994 (3d Cir.1980) ("[F]ederal rights . . . cannot be denied by the passage of state legislation."); Bak v. Twp. of Brick, No. 91-3385, 1992 WL 233855, at *2 (D.N.J. Sept. 9, 1992) ("To the extent that defendants attempt to argue that the New Jersey law immunizes them from liability from violations of plaintiff's federal constitutional rights, defendants are clearly mistaken.") (citing Martinez v. California, 444 U.S. 277, 284 n. 8 (1980)).

**4.       Statute of Limitations**

All Defendants move to dismiss Plaintiff's Second Amended Complaint on the basis of statute of limitations.  According to the Defendants, Plaintiff's cause of action under § 1983 accrued, at the earliest, on May 24, 2005, when he was removed from his home by the Hackensack police and placed at Bergen Regional Medical Center for psychiatric evaluation or, at the latest, on May 25, 2005, the date on which Plaintiff was formally charged and arrested.  Defendants each urge the Court to dismiss Plaintiff's Second Amended Complaint, in its entirety, because he filed his original complaint – on October 23, 2009 – well beyond the time permitted under the applicable statute of limitations.

A defendant may prevail on the statute of limitations at the motion to dismiss stage "if the

time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. United States Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).  Actions brought pursuant to 42 U.S.C. § 1983 are subject to the statute of limitations applicable to personal injury claims in the state in which the claim arises,[5] without regard for the facts upon which the claim is based or the nature of the injury sustained. Owens v. Okure, 488 U.S. 235, 249-250 (1989).  Under New Jersey law, a personal injury claim must be brought within two years of the date of accrual. N.J.S.A. 2A:14-2. Thus, it follows that the statute of limitations for § 1983 claims in New Jersey is two years. Cito v. Bridgewater Township Police Dep't, 892 F.2d 23 (3d Cir.1989); O'Connor v. City of Newark, 440 F.3d 125, 126-27 (3d Cir. 2006).  A § 1983 cause of action accrues under federal law when the allegedly wrongful act occurred. See Wallace v. Kato, 549 U.S. 384, 388 (2007).

### A.    False Arrest and False Imprisonment

A section 1983 claim for false arrest accrues on the date of the plaintiff's arrest. Torres v. McLaughlin, 163 F.3d 169, 176 (3d Cir. 1998).  A claim for false imprisonment accrues at the time of unlawful detention. Hyatt v. County of Passaic, 340 Fed. Appx. 833 (2009).  Plaintiff alleges to have been taken into custody on May 24, 2005. (Compl., ¶ ¶ 22, 23).  Formal charges were filed against Plaintiff on May 25, 2005. (Compl., ¶ 23(a)).  The Inmate Commitment Summary Report attached to Plaintiff's original Complaint shows that bond was set on May 25, 2005.  See Docket

---

[5] The parties do not dispute that Plaintiff's claims arose in the State of New Jersey.

Entry No. 2 at 38.[6]  Thus, Plaintiff's false arrest and false imprisonment claims accrued, at the latest, on May 25, 2005.  Plaintiff's Complaint was filed on October 23, 2009, well over two years from the date on which these claims accrued.[7]  Plaintiff's false arrest and false imprisonment claims are, therefore, untimely[8] and are hereby dismissed as to all Defendants <u>with</u> prejudice.[9]

## B.    Malicious Prosecution and Conspiracy to Maliciously Prosecute

An action for malicious prosecution accrues upon the favorable termination of a criminal proceeding.  <u>See</u> <u>Rose v. Bartle</u>, 871 F.2d 331, 348-351 (3d Cir.1989).  Thus, Plaintiff's claim for malicious prosecution accrued on October 25, 2007, the date on which all criminal charges against him were dismissed.  (Compl., ¶ 2).  Plaintiff's original complaint was filed on October 23, 2009.

---

[6] This document was incorporated by reference into Plaintiff's Second Amended Complaint and is therefore properly considered by the Court on a motion to dismiss. <u>See</u> Second Am. Compl., ¶ 23(a) (referring to "Exhibit G" containing "three page printout of bergen county jail records."); <u>McTernan v. City of York, Penn.</u>, 577 F.3d 521, 526 (3d Cir. 2009) ("In addition to the complaint itself, the court can review documents attached to the complaint....").

[7] To the extent Plaintiff urges the Court to toll the statute of limitations based upon the "continuing tort doctrine," Plaintiff has failed to persuade the Court (with any binding legal authority) that such doctrine should be applied in this case.  <u>See</u> generally <u>Kichline v. Consolidated Rail Corp.</u>, 800 F.2d 356, 360 (3d Cir. 1986) (noting that the "continuing conduct of defendant will not stop the ticking of the limitations clock begun when plaintiff obtained requisite information. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy.").

[8] Plaintiff essentially concedes as much.  <u>See</u> Docket Entry No. 114 at 10 ("Plaintiff believes his complaint states a claim at least for maliciously [sic] prosecution and related civil rights conspiracy under 42 U.S.C. § 1983 that should survive these Defendants Motion to Dismiss").

[9] To the extent Plaintiff's Second Amended Complaint should be construed as asserting a claim for unlawful search and seizure under section 1983, such claim would also be time barred inasmuch as such claim would have accrued on the date on which the officers entered into Plaintiff's apartment – May 23, 2005. (Compl., ¶ 20(a)). <u>See, e.g.</u>, <u>MacNamara v. Hess</u>, 67 Fed. Appx. 139, 143 (3d Cir. 2003) ("Accordingly any Fourth-Amendment-based claim accrued on the same day as the allegedly unlawful search and seizure.").

Because Plaintiff's original complaint was filed within two years of the date on which his malicious prosecution claim accrued, the Court declines to dismiss such claim (as well as the related claim of conspiracy to maliciously prosecute) on the basis of statute of limitations. See, e.g., Wiltz v. Middlesex County Office of Prosecutor, 249 Fed. Appx. 944, 949 (3d Cir. 2007) ("The statute of limitations on malicious prosecution claims 'does not begin to run until the underlying criminal proceedings are terminated in plaintiff's favor.' The same is true for civil rights conspiracy claims involving alleged malicious prosecution.") (citing Rose, 871 F.2d at 352).

**5.      Failure to State a Claim**

Defendants also move to dismiss Plaintiff's Second Amended Complaint on the basis of failure to state a claim upon which relief may be granted. Having dismissed Plaintiff's claims of false arrest and false imprisonment on the basis of statute of limitations, the Court now considers whether Plaintiff has properly pled his claims of malicious prosecution, conspiracy to maliciously prosecute, and equal protection.

**A.      Malicious Prosecution**

In order to state a claim for malicious prosecution as a constitutional violation, a plaintiff must establish: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-2 (3d Cir.2007). Thus, in order to state a

13

claim for malicious prosecution, Plaintiff must establish, among other things, that the defendant initiated a criminal proceeding against Plaintiff.  The only criminal proceeding against Plaintiff alleged in the Second Amended Complaint was initiated by: (1) Sergeant Thomas Aiellos (through the filing of a criminal complaint), and (2) the Bergen County Prosecutor. (Compl., ¶ 23(b) and (f)).[10] This is confirmed by the Investigation Report and Arrest and Pedigree Form, both of which were submitted by Plaintiff and incorporated by reference into Plaintiff's Second Amended Complaint. See Second Am. Compl., ¶ 23(b) (referring to "Exhibit H," Docket Entry No. 2 at 42, 48, containing criminal complaint filed by Sgt. Thomas Aiellos).

As a preliminary matter, the Bergen County Prosecutor, Assistant Prosecutor Nicholas Ostuni and John Doe members of the Bergen County Prosecutor's staff are absolutely immune for their actions in carrying out prosecutorial functions.  See Kulwicki v. Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992) (holding that a prosecutor is absolutely immune when initiating a prosecution).  The decision to charge a suspect is one of the primary tasks of a prosecutor; therefore the Bergen County Prosecutor and Assistant Prosecutor Nicholas Ostuni have absolute immunity for initiating the criminal proceedings against Plaintiff.  See, e.g., id.  This immunity extends to John Doe members of the Prosecutor's staff in connection with their investigative assistance relating to Plaintiff's prosecution.  See, e.g., Davis v. Grusemeyer, 996 F.2d 617, 631-32 (3d Cir. 1993), abrogated on other grounds by Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir. 1998).  Plaintiff's malicious prosecution claim as against the Bergen County Prosecutor, Assistant Prosecutor Nicholas

---

[10] To the extent Plaintiff has attempted to allege that other defendants indirectly "initiated" the criminal proceedings against him, any such actions by those defendants, as alleged in the Second Amended Complaint, were too minor and/or removed from the prosecution to satisfy the "instituted proceedings" prong of the malicious prosecution claim. See, e.g., Wiltz, 249 Fed. Appx. at 950.

Ostuni and John Doe members of the Bergen County Prosecutor's staff is therefore dismissed with prejudice.

As discussed above, the only other Defendant alleged to have initiated criminal proceedings against Plaintiff is Sergeant Thomas Aiellos.  "A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal, 129 S.Ct. at 1949. To the extent Plaintiff has attempted to assert a claim for malicious prosecution as against any other defendants, such claim is not plausible in light of Plaintiff's own allegations/submissions.  Therefore, Plaintiff's malicious prosecution claim is dismissed with prejudice as to all Defendants with the exception of Sergeant Thomas Aiellos.

Defendant Thomas Aiellos has not filed his own motion to dismiss the Second Amended Complaint.  Instead, he has chosen to join in the motion to dismiss filed by the "Municipal" Defendants.  That motion, however, concedes that Plaintiff's "malicious prosecution claim could survive against the defendant who filed the criminal complaint, namely Sgt. Thomas Aiellos." (Br. at 27).  Accordingly, Plaintiff's claim for malicious prosecution may proceed at this time, solely as to Defendant Aiellos.

**B.      Conspiracy to Maliciously Prosecute**

Plaintiff alleges, generally, that Defendants "conspired to commit and conceals [sic] these serious crimes and terroristic acts committed under color of law, they acted separately and/or in concert which aids, abets the maliciously [sic] prosecution of plaintiff for fictitious crimes." (Compl., ¶ 32(a)).  To constitute a civil conspiracy pursuant to § 1983, there must be a " 'meeting of the minds.' " Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 205 (3d Cir. 2008) (quoting

Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)).  Thus, in order to survive a Rule 12(b)(6) motion, Plaintiff's "allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Capogrosso v. The Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009).  In this regard, a plaintiff must allege that two or more co-conspirators reached an agreement for the purpose of depriving him of his constitutional rights under color of state law.  See, e.g., Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir.1993), overruled on other grounds, UA Theatre Circuit v. Twp. of Warrington, 316 F.3d 392 (3d Cir.2003).  "It is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa.1997). To the contrary, Plaintiff must show that the alleged conspirators "directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement." Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa.1982).

The Second Amended Complaint alleges the following facts in support of the conspiracy claim: (1) in the early 1990s, in retaliation for trying to file a complaint against a police officer in connection with an automobile accident, Plaintiff was warned by a Captain Smith (of the Hackensack Internal Affairs Police) to "back off" or else "things could happen to him," (2) his attorney at the time entered into an agreement with his adversary which resulted in a loss of medical and income continuation benefits, (3) four members of the Hackensack Police Department illegally entered his apartment in 2005, bullied him, made threats and ultimately unlawfully detained him, (4) his account of the 2005 incident was then altered and fabricated by the person who conducted his psychiatric evaluation at the Bergen Regional Medical Center, (5) the doctor who treated him at the

16

Bergen Regional Medical Center made false claims concerning his police reports in order to prolong Plaintiff's stay, (6) the criminal complaint filed by Sergeant Aiellos, resulting in Plaintiff's arrest, was fabricated and back-dated in an attempt to cover up his unlawful detention at the Bergen Regional Medical Center, (7) he was improperly administered antipsychotic medication while at the Bergen County Jail which caused him to suffer adverse physical reactions, and (8) attempts to seek redress from the Attorney General, the Bergen County Prosecutor, and the Hackensack Municipal Court were sabotaged and/or ignored. Plaintiff claims that such actions were carried out in an attempt to "ruin, destroy me and make an example of me in retaliation for plaintiff standing up to them." (Compl., ¶ 32(b)). Thus, Plaintiff makes clear that the object of the alleged conspiracy was retaliation for complaints he made to the Hackensack Police Department in the early 1990s (in connection with the handling of his automobile accident). (Compl., ¶ 32(b)).

As a general matter, the allegations in Plaintiff's Amended Complaint do not provide sufficient factual basis to support the existence of the elements of a conspiracy, namely, an agreement and some concerted action. Furthermore, Plaintiff has not pleaded any facts that plausibly suggest a meeting of the minds between members of the Hackensack Police Department, the Bergen Regional Medical Center, Care Plus NJ, Inc., the Bergen County Prosecutor's Office and/or the Hackensack Municipal Court. See generally Twombly, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). Moreover, Plaintiff has failed to allege the approximate time when the agreement was made or the period of the conspiracy. See generally Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir.1989) ("To plead conspiracy adequately, a plaintiff must set forth

allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."), abrogated on other grounds by Beck v. Prupis, 529 U.S. 494 (2000).

More specifically, Plaintiff fails to allege, with any factual support, that each of the foregoing Defendants reached an agreement to carry out such actions (all taking place between 2005 and 2007) with the mutual objective of retaliating against Plaintiff for the complaints he made in the early 1990s (in connection with his automobile accident). In fact, Plaintiff does not allege that any of the foregoing Defendants were even aware that he had made such complaints in the early 1990s. The mere fact that such complaints were made to the Hackensack Police Department (concerning a "Captain Smith" and his role in the investigation of Plaintiff's automobile accident) in the early 1990s and that a criminal complaint was filed by Sergeant Aiellos of the same police department in 2005 is insufficient, without more, to sustain a conspiracy claim. Simply put, the Second Amended Complaint lacks sufficient factual allegations to create "plausible grounds to infer an agreement," as is required by Twombly, 550 U.S. at 556. Defendant's motion to dismiss this claim is, therefore, granted.

### C.     Equal Protection

In order to state a § 1983 equal protection claim, a plaintiff must "prove the existence of purposeful discrimination." Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 151 (3d Cir.2005) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir.1990)). Thus, a plaintiff must demonstrate that he or she "received different treatment from that received by other individuals similarly situated." Shuman, 422 F.3d at 151 (citation omitted).

18

Plaintiff's allegations concerning this claim are limited to the following: "Each of the individual defendants, separately and in concert, acted wilfully, knowingly, and purposefully with the specific intent to deprive plaintiff of . . . every citizen's rights to equal protection under the law as guaranteed by State and Federal Laws, should not be ignored by the people charged with enforcing the laws whether at the city, county or state level." (Compl., ¶ 31(e)). Such claim is based on nothing more than Plaintiff's self-serving legal conclusions which are insufficient to withstand a motion to dismiss. See, e.g., Morse, 132 F.3d at 906 (noting that a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions"). Notably absent from the Second Amended Complaint are facts concerning any disparate treatment. For instance, although the Complaint could be construed as alleging some discrimination on the basis of race,[11] Plaintiff does not allege that similarly situated whites (or members of any other race) were treated any differently or that his arrest/prosecution were tainted by racial discrimination. See generally Cook v. Layton, 299 Fed. Appx. 173, 174 (3d Cir. 2008) ("Instead of asserting merely that the arrest lacked probable cause or legal justification, Cook alleges that Officer Layton acted with an illegal motive – racial discrimination – that tainted his entire prosecution."). Defendants' motion to dismiss this claim is therefore granted.[12]

---

[11] See Compl., ¶ 19(a).

[12] The Court recognizes that certain defendants sought dismissal of this claim on the basis of statute of limitations. Because Plaintiff's equal protection claim is entirely devoid of any factual content, the Court is unable to determine, at this time, whether such claim was timely asserted.

**D.     Amendment**

In light of Plaintiff's pro se status, and given his request for leave to amend the complaint, the Court will provide Plaintiff with one final opportunity to amend the Complaint to cure the pleading deficiencies in two of his claims: (1) conspiracy to maliciously prosecute, and (2) equal protection, both brought pursuant to § 1983.  In doing so, Plaintiff should be guided by the following directives:

1.     The sole remaining claim contained in the Second Amended Complaint is the claim of malicious prosecution as against Defendant Sergeant Aiellos.  All other claims contained in the Second Amended Complaint have now been dismissed as to all remaining Defendants.

2.     Plaintiff is granted permission to amend his conspiracy to maliciously prosecute and equal protection claims.  Should Plaintiff choose to amend these claims, Plaintiff must file with the Court a Third Amended Complaint which cures the pleading deficiencies addressed by the Court in this Opinion on or before **October 29, 2010.**  Plaintiff's failure to do so will result in dismissal of such claims with prejudice.

3.     To the extent Plaintiff chooses to re-plead either of these claims (or both), Plaintiff's Third Amended Complaint **must** clearly identify which claims are being brought against which specific defendants and to set forth specific factual allegations in support of each claim.  Plaintiff may also include his claim of malicious prosecution as against Defendant Aiellos, but Plaintiff **shall** exclude any facts and/or defendants pertaining to claims which have now been dismissed by the Court.  Plaintiff's failure to follow this directive may result in the complaint being stricken.

5.     Should Plaintiff choose not to re-plead his conspiracy and/or equal protection claims, the Second Amended Complaint will remain the operative complaint in this matter, and the case will

proceed solely as to Plaintiff's malicious prosecution claim as against Defendant Sergeant Aiellos.

## **CONCLUSION**

Defendants' motions to dismiss are granted in part and denied in part. The sole remaining claim in Plaintiff's Second Amended Complaint is a § 1983 claim for malicious prosecution as against Defendant Sergeant Aiellos. Plaintiff's false arrest and false imprisonment claims are hereby dismissed with prejudice. All claims asserted against the Superior Court of New Jersey, Bergen Vicinage, Municipal Division, the Hackensack Municipal Court and the Hackensack Police Department are dismissed with prejudice. Plaintiff is granted leave to amend his equal protection and conspiracy to maliciously prosecute claims, both of which are brought pursuant to § 1983. To the extent Plaintiff wishes to re-plead such claims, Plaintiff shall file a Third Amended Complaint which complies with the directives set forth by the Court above on **or before October 29, 2010.** Plaintiff's failure to do so will result in such claims being dismissed with prejudice. Should Plaintiff choose to stand on his Second Amended Complaint, the matter will proceed solely as to Plaintiff's claim of malicious prosecution as against Defendant Sergeant Aiellos.

DATE:        October 8, 2010

/s/ Jose L. Linares

JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE