NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONELL L. PRINCE, | Civil Action No.: 09-5429 (JLL) |
| Plaintiff, | |
| v. | |
| THOMAS AIELLOS, et al., | OPINION |
| Defendants. | |

**LINARES,** District Judge.

This matter comes before the Court by way of three motions to dismiss Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as several informal requests to strike Plaintiff's Third Amended Complaint. The formal motions to dismiss have been filed by the following Defendants: Erin Fahey and Care Plus NJ, Inc.; Bergen Regional Medical Center and Erica Schiffman, M.D.; and Thomas Aiellos, A. Gutierrez and A. Ferraioli. The Court has considered the submissions made in support of and in opposition to the instant motions. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, the foregoing motions are **granted.** The matter will proceed solely as to: (a) Plaintiff's claim of malicious prosecution as against Defendant Sergeant Thomas Aiellos, and (b) Plaintiff's equal protection claim as against Defendant Janice Behnke. Defenant Aiellos shall file an Answer to Plaintiff's Third Amended Complaint within fourteen (14) days. Defendant Behnke shall file an Answer or a motion to dismiss Plaintiff's Third Amended Complaint within fourteen (14) days.

1

## BACKGROUND

**1.     Procedural Background**

Plaintiff, proceeding pro se in this matter, commenced the instant cause of action on October 23, 2009. An Amended Complaint was filed in February 2010. A motion to dismiss Plaintiff's Amended Complaint was filed by Defendant Bergen Regional Medical Center on April 5, 2010. The motion was joined by Defendants E. Fahey and Care Plus NJ, Inc. on April 16, 2010. On April 23, 2010, Defendants' motion to dismiss the complaint was granted. In doing so, the Court noted that Plaintiff had failed to oppose said motion and that Plaintiff's § 1983 claims as against the foregoing defendants were barred by the two-year statute of limitations given that "no wrongful act by moving Defendants is alleged to have occurred later than the end of 2005, well over two years prior to the filing of the original complaint in this case." See Docket Entry No. 40 at 3.

On May 7, 2010, Plaintiff filed a motion to vacate this Court's April 23, 2010 decision pursuant to Federal Rule of Civil Procedure 60(b)(6). Plaintiff also requested leave to amend the Amended Complaint. On July 12, 2010, this Court granted Plaintiff's motion to vacate and granted Plaintiff's request for leave to file a Second Amended Complaint. In doing so, the Court also dismissed, without prejudice, all motions to dismiss the Amended Complaint which were pending at that time. The Second Amended Complaint was filed on the Court's docket in August 2010. Seven motions to dismiss the Second Amended Complaint were subsequently filed. On October 8, 2010, this Court granted in part and denied in part the foregoing motions. In particular, the Court found that Plaintiff had stated a claim of malicious prosecution as against Sergeant Thomas Aiellos, but that all other claims asserted, as against all other Defendants, failed to state a claim upon which relief may be granted. The Court did, however, grant Plaintiff leave to file a Third Amended

Complaint to cure the pleading deficiencies in two claims: (1) conspiracy to maliciously prosecute, and (2) equal protection. In doing so, the Court explained as follows:

> To the extent Plaintiff chooses to re-plead either of these claims, Plaintiffs is hereby advised to <u>clearly</u> identify which claims are being brought against which specific defendants and to set forth specific factual allegations in support of <u>each</u> claim. Plaintiff is also directed to exclude any facts and/or defendants pertaining to claims which have now been dismissed by the Court. Should Plaintiff choose <u>not</u> to re-plead his conspiracy and/or equal protection claims, this case will proceed solely as to Plaintiff's malicious prosecution claim as against Defendant Sergeant Aiellos.

(October 8, 2010 Opinion).

On October 27, 2010, Plaintiff filed a Third Amended Complaint. Three formal motions to dismiss have since been filed and are now before the Court. In addition, several Defendants have filed informal requests to strike the Third Amended Complaint on the basis that it fails to comply with the directives set forth in this Court's October 8, 2010 Opinion and Order.

**2.     Third Amended Complaint**

The Court has closely reviewed Plaintiff's Third Amended Complaint and finds that the allegations set forth therein are, for all intents and purposes, the same as the allegations set forth in the Second Amended Complaint. For purposes of ease and efficiency, the Court relies on its October 8, 2010 recitation of the alleged facts, as follows, all of which are accepted as true for purposes of this motion:

> Plaintiff has a history with the Hackensack Police Department and Municipal Court dating back to the early 1990s which stems from an automobile accident and his attempts to hold certain police officers, paramedics and others accountable in connection with said accident. (Compl., ¶ 19(a)). In particular, Plaintiff alleges that he was involved in an automobile accident during that time period and sustained

3

injuries as a result. The paramedic and police officer who reported to the scene of the accident, upon realizing that Plaintiff was black, questioned whether or not he had actually been injured. (Compl., ¶ 19(a)). Believing that Plaintiff was faking his injuries, the police officer falsified the accident report to blame the accident on an unknown third-party. (Compl., ¶ 19(a)). At the time, the Hackensack Police Department and Municipal Court refused to allow Plaintiff to file any complaints related to this accident. ( Id.). To the contrary, Hackensack Internal Affairs Police Captain Smith warned Plaintiff to back off otherwise "things could happen" to him. ( Id.). Plaintiff further alleges that "coincidentally some of their threats came true" when the attorney representing him in a related personal injury matter secretly agreed with his adversaries to handle Plaintiff's claims improperly, which ultimately led to the loss of his medical and income continuation benefits. (Compl., ¶ 19(b)).

On May 23, 2005, while Plaintiff was "coincidentally" working on an appeal in connection with his automobile accident, certain members of the Hackensack Police Department illegally entered his apartment. (Compl., ¶¶ 19(c), 20(a)). According to the Complaint, four plain clothes narcotics police officers from the Hackensack Police Department (Thomas Aiellos, W. Inglima, A. Gutierrez and A. Ferraoili), who claimed they were chasing a suspect in the area, came upon Plaintiff's apartment and noticed that the front door was ajar. ( Id.). Without knocking on the door or announcing themselves as police officers, said officers attempted to enter Plaintiff's apartment, at which time Plaintiff grabbed his gun to protect himself and turned on the lights. ( Id.). Plaintiff later found out that, following the May 23, 2005 incident, Lt. Lee from the Hackensack Police Department had called a psychiatric hotline screener associated with Care Plus of NJ, Inc. and/or the Bergen Regional Medical Center Psychiatric Unit and conveyed certain information concerning Plaintiff's behavior that evening: he had threatened to kill himself; he had his refrigerator chained up; he fought "imaginary people"; and he was generally delusional. (Compl., ¶ 22(a)).

Although the May 23, 2005 incident ended uneventfully, the officers returned to Plaintiff's apartment the following night and asked Plaintiff to go down to the police station to discuss what had happened the night before. (Compl., ¶ 21). Plaintiff complied with their request and voluntarily went to the police station. ( Id.). Although Plaintiff was not placed under arrest, he was led to a holding cell. ( Id.). Plaintiff asked for a telephone or an attorney but was told that he was not entitled to either because he was not under

arrest. ( Id.). Plaintiff was then taken to the Bergen Regional Medical Center for a psychiatric evaluation pursuant to a purported Court Order. ( Id.). From May 24, 2005 to May 25, 2005, Plaintiff remained at the Bergen Regional Medical Center, despite no formal charges having been filed against him. ( Id.). During this time, he was "hand cuffed to [a] bed and under police guard." (Compl., ¶ 22(c)). He was interviewed by Defendant E. Fahey, an employee of Care Plus NJ, Inc., at the Bergen Regional Medical Center on May 25, 2005. (Compl ., ¶ 24). The Second Amended Complaint alleges that some of the notes taken by E. Fahey of Plaintiff's account of the May 23, 2005 incident were fabricated, altered and later destroyed. (Compl., ¶ 24). During his stay at the Bergen Regional Medical Center, Plaintiff was treated by Defendant Dr. Schiffman, who falsely claimed to be having difficulty locating the relevant police reports and asked Plaintiff to sign a voluntary committal form so as to prolong his stay. (Compl., ¶ 25(b).

On or about May 25, 2005, Plaintiff was charged with several crimes in connection with the May 23, 2005 incident. (Compl., ¶ 23(a)). The criminal complaint was filed by Sergeant Thomas Aiellos and charges were brought by the Bergen County Prosecutor. (Compl., ¶¶ 23(b) and (f)). Plaintiff alleges that the criminal complaint and/or investigation report filed by Sgt. Aiellos were backdated to May 24, 2005 "to cover up what [had] happened during the first (19) nineteen hour[s] [Plaintiff] was in police custody at the hospital." (Compl., ¶ 23(c)). In connection with these charges, Plaintiff was transferred to the Bergen County Jail on June 13, 2005 and was released on August 30, 2005. (Compl., ¶¶ 25(c), 26, 27(a)). While at the Bergen County Jail, Plaintiff was denied his regular medication and was, instead, administered an antipsychotic medication, which caused him to suffer adverse physical reactions. (Compl., ¶ 26).

Plaintiff sent a letter to the Attorney General's Office on October 25, 2005 concerning the May 23, 2005 incident. (Compl., ¶ 27(a)). Plaintiff was then referred to the Bergen County Prosecutor's Office. ( Id.). He forwarded a letter to the Bergen County Prosecutor's Office in November 2005. ( Id.). On November 15, 2005, the charges filed against Plaintiff were downgraded by Prosecutor Nicholas Ostuni and were remanded to the Hackensack Municipal Court. (Compl., ¶ 27(b)). In particular, the Second Amended Complaint alleges that charges of aggravated assault on a police officer and possession of a weapon for unlawful purposes were downgraded to simple assault and disorderly conduct. (Compl., ¶ 27(b)).

> Plaintiff visited the Hackensack Municipal Court on September 12, 15 and 18, 2006 in order to file his own criminal charges against various police officers. (Compl., ¶ 28(a)). Plaintiff was told by the Court Administrator, Janice Behnke, that all criminal complaints must enclose the applicable police reports and that his allegations should first be investigated by the internal affairs unit of the police department. (Compl., ¶ 28(b)). At some point thereafter, Plaintiff visited the Bergen County Administrative Offices for the Municipal Courts to complain about his treatment at the Hackensack Municipal Court. (Compl., ¶ 29(b)). He asked if he could file a criminal complaint at that office, but was told that he could not. ( Id.).
>
> On or about February 22, 2007, Plaintiff attempted to file criminal complaints with the Bergen County Prosecutor's Office alleging "serious crimes and attempts to cover up same by a number of Hackensack Police officers and others ..." but was not permitted to do so. (Compl., ¶ 27(c)). On February 26, 2007, Plaintiff sent a second letter to the Attorney General's office wherein he questioned why his October 25, 2005 letter was never responded to and reiterated his prior complaints concerning his arrest and, in particular, actions by certain members of the Hackensack Police Department, members of the hospital staff, members of the Bergen County Prosecutor's Office, and employees of the Hackensack Municipal Court. (Ex. K to Plaintiff's Original Complaint).
>
> The Complaint further alleges that on September 13, 2007, during a hearing in connection with Plaintiff's criminal case, Sgt. Aiellos testified falsely concerning the timing of Plaintiff's arrest. (Compl., ¶ 23(d)). Ultimately, all criminal charges against Plaintiff were dismissed on October 25, 2007 by the Honorable Roy J. McGeady, P.J.M.C. (Compl., ¶ 2).

(October 8, 2010 Opinion).

The Third Amended Complaint alleges the following additional relevant facts: During the May 23, 2005 incident, while the police officers were in Plaintiff's apartment, Plaintiff told Sergeant Aiellos that the reason he bought a gun ten years earlier was because he had been injured as a result of a car accident from the 1990s and that he had "made some enemies" as a result of trying to hold certain individuals accountable in connection with said accident. (Third Am. Compl. at 15). Plaintiff

6

also alleges that during his September 2006 visit to the Hackensack Municipal Court, Court Administrator, Janice Behnke, treated him differently from the white and/or "Latin" males who were also in line that day. (Third Am. Compl. at 36). In particular, Plaintiff alleges that instead of accepting Plaintiff's complaint (against certain police officers in connection with his May 2005 incident) for filing, "as she did with the . . . white and/or Latin male that was in line before Plaintiff," Janice Behnke rejected Plaintiff's complaint because he was black. (Id.).

In light of the foregoing, Plaintiff commenced the instant cause of action on October 23, 2009, alleging various claims pursuant to 42 U.S.C. § 1983 against numerous defendants, including but not limited to: (1) the Hackensack Police Department and several of its officers, (2) the Hackensack Municipal Court and several of its employees, (3) the Bergen County Jail and several of its employees, (4) the Bergen County Prosecutor and staff and (5) the Bergen Regional Medical Center and several of its staff. As previously explained, by way of Opinion and Order dated October 8, 2010, all claims were dismissed with the exception of Plaintiff's claim of malicious prosecution as against Sergeant Thomas Aiellos. Plaintiff was granted leave to amend two additional claims: (1) conspiracy to commit malicious prosecution, and (2) equal protection. Thus, these are the only two claims currently before the Court.

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the

plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). With this framework in mind, the Court tuns now to Defendants' motions.

**DISCUSSION**

**1.    Conspiracy to Commit Malicious Prosecution**

In order to demonstrate the existence of a conspiracy under section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." Royster v. Beard, 308 Fed. Appx. 576, 579 (3d Cir. 2009). Thus, in order to survive a Rule 12(b)(6) motion, Plaintiff's "allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Capogrosso v. The Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir.2009). In this regard, a plaintiff must allege that two or more co-conspirators reached an agreement for the purpose of depriving him of his constitutional rights under color of state law. See, e.g., Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir.1993). "It is not enough to allege that the end result of the

parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa.1997). To the contrary, Plaintiff must show that the alleged conspirators "directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement." Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa.1982). This requires facts suggesting a "meeting of the minds." Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 205 (3d Cir. 2008) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)).

In dismissing this claim, this Court previously noted the following:

> The Second Amended Complaint alleges, generally, that: (1) in the early 1990s, in retaliation for trying to file a complaint against a police officer in connection with an automobile accident, Plaintiff was warned by a Captain Smith (of the Hackensack Internal Affairs Police) to "back off" or else "things could happen to him, (2) his attorney at the time entered into an agreement with his adversary which resulted in a loss of medical and income continuation benefits, (3) four members of the Hackensack Police Department illegally entered his apartment in 2005, bullied him, made threats and ultimately unlawfully detained him, (4) his account of the 2005 incident was then altered and fabricated by the person who conducted his psychiatric evaluation at the Bergen Regional Medical Center, (5) the doctor who treated him at the Bergen Regional Medical Center made false claims concerning his police reports in order to prolong Plaintiff's stay, (6) the criminal complaint filed by Sergeant Aiellos, resulting in Plaintiff's arrest, was fabricated and back-dated in an attempt to cover up his unlawful detainment at the Bergen Regional Medical Center, (7) he was improperly administered antipsychotic medication while at the Bergen County Jail which caused him to suffer adverse physical reactions, and (8) attempts to seek redress from the Attorney General, the Bergen County Prosecutor, and the Hackensack Municipal Court were sabotaged and/or ignored. Plaintiff claims that such actions were carried out in an attempt to "ruin, destroy me and make an example of me in retaliation for plaintiff standing up to them." (Compl., ¶ 32(b)). Thus, Plaintiff makes clear that the object of the alleged conspiracy was retaliation for complaints he made to the Hackensack Police Department in the early 1990s (in connection with the handling of his automobile

9

accident).  (Compl., ¶ 32(b)).

(October 8, 2010 Opinion).  Plaintiff has failed to supplement these allegations with any facts that plausibly suggest a meeting of the minds between members of the Hackensack Police Department, the Bergen Regional Medical Center, the Bergen County Prosecutor's Office and/or the Hackensack Municipal Court.  See Twombly, 550 U.S. at 556 ("Asking for plausible grounds [to infer an agreement] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  Critically, Plaintiff still fails to allege, with any factual support, that any of the Defendants reached an agreement to carry out such actions (all taking place between 2005 and 2007) with the mutual objective of retaliating against Plaintiff for the complaints he made in the early 1990s (in connection with his automobile accident).

Previously, the Court had noted that it was unclear, based upon the allegations in the Second Amended Complaint, whether any of the Defendants were even aware of the complaints made by Plaintiff in the 1990s.  Plaintiff has amended his complaint to include the allegation that during the May 2005 incident at his apartment, he made the police officers and, in particular, Sergeant Thomas Aiellos, aware of the complaints he had made in the early 1990s. (Third Am. Compl. at 15).  By this point, however, the police officers were already inside of Plaintiff's apartment; that is, the "wheels" underlying Plaintiff's claim of conspiracy had already been set in motion.  See, e.g., Third Am. Compl. at 16 (noting that the reason given by the police officers for entering Plaintiff's apartment on May 25, 2005 were "suspect" and that the real reason was "in furtherance of a planned, arranged scheme to intimidate and threaten the Plaintiff.").

Moreover, facts alleged with respect to the other Defendants suggest their actions were not

10

directed (or motivated) by any type of mutual or common understanding. For instance, although Plaintiff attempts to hold Defendant Fahey and Care Plus NJ, Inc. liable under his conspiracy theory, the Third Amended Complaint confirms that one of the police officers told a "fictitious" account of the May 25, 2005 incident to Defendant Fahey, the Care Plus NJ, Inc. Psychiatric Screener, so that she would mis-diagnose Plaintiff as psychotic so as to destroy Plaintiff's credibility and so that he would be released back into police custody. (Third Am. Compl. at 21). Thus, there is no indication that Defendant Fahey and/or Care Plus, NJ, Inc. had any type of mutual understanding with any co-defendants directed toward the common goal of maliciously prosecuting the Plaintiff. To the contrary, based on Plaintiff's own allegations, Defendant Fahey was deceived by the police officer defendants.

Similarly, Plaintiff alleges that one of the "head doctors" at the Bergen Regional Medical Center actually "intervened" on Plaintiff's behalf, contacted his family for him and declined to release him back into police custody. (Id. at 21-22). Lastly, despite claiming that Defendant Dr. Shiffman falsely claimed to be having difficulty locating the relevant police reports and asked Plaintiff to sign a voluntary committal form so as to prolong his stay, in furtherance of the overarching conspiracy, Plaintiff goes on to allege that the reason Dr. Shiffman did so was because she was "illegally" billing Medicare for his prolonged stay. (Third Am. Compl. at 31). Such allegations undercut the notion that Defendants, together, violated Plaintiff's constitutional right by virtue of a mutual understanding or agreement. See, e.g., Chicarelli, 551 F. Supp. at 539. Certainly, they fail to demonstrate a "meeting of the minds" for purposes of Plaintiff's § 1983 conspiracy to maliciously prosecute claim.

In short, the mere fact that Plaintiff made certain complaints to the Hackensack Police

11

Department (concerning a "Captain Smith" and his role in the investigation of Plaintiff's automobile accident) in the early 1990s and that a criminal complaint was filed by Sergeant Aiellos of the same police department in 2005 is insufficient, without more, to sustain a conspiracy claim pursuant to § 1983. Defendants' motion to dismiss this claim is, therefore, granted. Plaintiff's claim of conspiracy to maliciously prosecute is dismissed, as to all defendants, with prejudice.

**2.     Equal Protection**

In order to state a § 1983 equal protection claim, a plaintiff must "prove the existence of purposeful discrimination." Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 151 (3d Cir. 2005) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)). Thus, plaintiff must demonstrate that he or she "received different treatment from that received by other individuals similarly situated." Shuman, 422 F.3d at 151 (citation omitted).

With respect to this claim, the Court previously held the following:

> Plaintiff's allegations concerning this claim are limited to the following: "Each of the individual defendants, separately and in concert, acted wilfully, knowingly, and purposefully with the specific intent to deprive plaintiff of . . . every citizen's rights to equal protection under the law as guaranteed by State and Federal Laws, should not be ignored by the people charged with enforcing the laws whether at the city, county or state level." (Compl., ¶ 31(e)). Such claim is based on nothing more than Plaintiff's self-serving legal conclusions which are insufficient to withstand a motion to dismiss. See, e.g., Morse, 132 F.3d at 906 (noting that a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions"). Notably absent from the Second Amended Complaint are facts concerning any disparate treatment. For instance, although the Complaint could be construed as alleging some discrimination on the basis of race, Plaintiff does not allege that similarly situated whites (or members of any other race) were treated any differently or that his arrest/prosecution were tainted by racial discrimination. See generally Cook v. Layton, 299 Fed. Appx. 173, 174 (3d Cir. 2008) ("Instead of

> asserting merely that the arrest lacked probable cause or legal justification, Cook alleges that Officer Layton acted with an illegal motive – racial discrimination – that tainted his entire prosecution.").

(October 8, 2010 Opinion). The only substantive factual allegation added by Plaintiff in support of this claim, as best gleaned by the Court, is that during his September 2006 visit to the Hackensack Municipal Court, Court Administrator, Janice Behnke, treated him differently from the white and/or "Latin" males who were also in line that day. (Third Am. Compl. at 36). Thus, it is alleged that instead of accepting Plaintiff's complaint (against certain police officers in connection with his May 2005 incident) for filing, "as she did with the . . . white and/or Latin male that was in line before Plaintiff," Janice Behnke rejected Plaintiff's complaint because he was black. (Id.).

Defendant Behnke has not filed a formal motion to dismiss the Third Amended Complaint. Instead, through counsel, she has submitted a letter, dated November 10, 2010, asking the Court to consider said letter as an informal request for the dismissal of the Third Amended Complaint. In light of the allegations set forth above, the Court cannot, based on the current briefing, grant Defendant Behnke the relief requested. The Court will, instead, direct Defendant Behnke to file a responsive pleading or motion to dismiss Plaintiff's equal protection claim within fourteen (14) days.

Having failed to set forth any additional facts in support of this claim as to any other Defendant, the Court finds that Plaintiff has failed to state a viable equal protection claim as to the remaining Defendants. Accordingly, Plaintiff's equal protection claim is dismissed, with prejudice, as to all Defendants with the exception of Defendant Janice Behnke.

## **CONCLUSION**

Defendants' motions to dismiss are granted. Plaintiff's claim of conspiracy to maliciously

13

prosecute is dismissed with prejudice as to all Defendants. Plaintiff's equal protection claim is dismissed with prejudice as to all Defendants with the exception of Defendant Janice Behnke.

At this juncture, this matter will proceed solely as to: (a) Plaintiff's claim of malicious prosecution as against Defendant Sergeant Thomas Aiellos,[1] and (b) Plaintiff's equal protection claim as against Defendant Janice Behnke. All other claims as to all other Defendants have now been dismissed with prejudice. The Clerk's Office is directed to modify the Court's docket accordingly.

Defendant Sergeant Thomas Aiellos shall file an Answer to Plaintiff's Third Amended Complaint within fourteen (14) days from the date of entry of this Court's corresponding Order. Defendant Janice Behnke shall file an Answer or a formal motion to dismiss Plaintiff's Third Amended Complaint within fourteen (14) days from the date of entry of this Court's corresponding Order.

An appropriate Order accompanies this Opinion.


DATE:   December 21, 2010

/s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE

---

[1] See October 8, 2010 Opinion and Order.