NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONELL L. PRINCE, <br><br> Plaintiff, <br><br> v. <br><br> SGT. THOMAS AIELLOS, <br><br> Defendant. | Civil Action No. 09-5429 (JLL) (JAD) <br><br> OPINION |

**LINARES,** District Judge.

This action concerns a single claim of malicious prosecution pursuant to 42 U.S.C. § 1983 against Thomas Aiellos ("Defendant"), who was at all relevant times a sergeant with the Hackensack Police Department. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Donell L. Prince ("Plaintiff"), proceeding *pro se* in this action, has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket Entry No. 229). In response, Defendant has filed a cross-motion for summary judgment. (Docket Entry No. 234). The Court has considered the submissions made in support of and in opposition to both motions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment are DENIED.

**I.  BACKGROUND**

Plaintiff's § 1983 malicious prosecution claim, the sole remaining claim in this action, centers on Plaintiff's allegation that Defendant Aiellos fabricated the facts underlying a criminal

1

complaint that he filed against Plaintiff. Plaintiff's Third Amended Complaint, the operative complaint in this matter, explains the basis of Plaintiff's claim. Although the facts alleged in Plaintiff's Third Amended Complaint are not accepted as true for purposes of this motion, given the protracted history of this case and Plaintiff's *pro se* status, the Court summarizes these facts below *for background purposes only*. The Court's summary is drawn from its October 8, 2010 recitation of the alleged facts.

> Plaintiff has a history with the Hackensack Police Department and Municipal Court dating back to the early 1990s which stems from an automobile accident and his attempts to hold certain police officers, paramedics and others accountable in connection with said accident. In particular, Plaintiff alleges that he was involved in an automobile accidence during that time period and sustained injuries as a result. The paramedic and police officer who reported to the scene of the accident, upon realizing that Plaintiff was black, questioned whether or not he had actually been injured. Believing that Plaintiff was faking his injuries, the police officer falsified the accident report to blame the accident on an unknown third-party. At the time, the Hackensack Police Department and Municipal Court refused to allow Plaintiff to file any complaints related to this accident. To the contrary, Hackensack Internal Affairs Police Captain Smith warned Plaintiff to back off otherwise "things could happen" to him. Plaintiff further alleges that "coincidentally some of their threats came true" when the attorney representing him in a related personal injury matter secretly agreed with his adversaries to handle Plaintiff's claims improperly, which ultimately led to the loss of his medical and income continuation benefits.
>
> On May 23, 2005, while Plaintiff was "coincidentally" working on an appeal in connection with his automobile accident, certain members of the Hackensack Police Department illegally entered his apartment. According to the Complaint, four plain clothes narcotics police officers from the Hackensack Police Department (Thomas Aiellos, W. Ingima, A. Gutierrez and A. Ferraoili), who claimed they were chasing a suspect in the area, came upon Plaintiff's apartment and noticed that the front door was ajar. Without knocking on the door or announcing themselves as police officers, said officers attempted to enter Plaintiff's apartment, at which time Plaintiff grabbed his gun to protect himself and turned on the lights. . . .

> Although the May 23, 2005 incident ended uneventfully, the officers returned to Plaintiff's apartment the following night and asked Plaintiff to go down to the police station to discuss what had happened the night before. Plaintiff complied with their request and voluntarily went to the police station. Although Plaintiff was not placed under arrest, he was led to a holding cell.

(Op. 2-4, Docket Entry No. 117 (internal citations omitted)).

Plaintiff has submitted a sworn statement indicating that while at the Hackensack Police Station on May 24, 2005, he had the following exchange with Defendant and four other police officers:

> I stated to officers I don't know what lies you people have told but you want get away with this, they started laughing as they turned the corner and I overheard a voice state, "listen guys I don't want to be involved in this, I don't want this on my conscience, another voice was heard saying it was to late now he's going down for this, as well someone said there going to be a lawsuit because of this and someone responded by saying who going to believe him, then more laughing was heard . . . .

(Pl.'s Aff. #1 ¶ 14(d), Docket Entry No. 229-4).

Also on May 24, 2005, Defendant filed a criminal complaint against Plaintiff for aggravated assault and possession of a weapon for an unlawful purpose. (Pl.'s 56.1 Stmt. ¶ 10, Docket Entry No. 229-1; Def.'s Resp. 56.1 Stmt. ¶ 10, Docket Entry No. 234-2; Def.'s Resp. to Pl.'s Interrog. No. 15, Ex. C, Docket Entry No. 239). Defendant based the criminal complaint on the events of May 23, 2005. (Def.'s Resp. to Pl.'s Interrog. No. 15). According to Defendant, he knocked on Plaintiff's door, announced himself as a police officer, and was greeted by Plaintiff pointing a gun at him. (*Id.*). Plaintiff denies that Defendant knocked on his door and announced himself as a police officer. (Pl.'s Aff. #2 ¶ 1, Docket Entry No. 243). Plaintiff also denies opening his door and pointing a gun at Defendant. (*Id.*) Eventually, the criminal complaint

against Plaintiff was dismissed in October 2007. (Pl.'s 56.1 Stmt. ¶ 11; Def.'s Resp. 56.1 Stmt. ¶ 11).

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III. DISCUSSION

The Court begins by reiterating that there is one claim at issue here—a § 1983 malicious prosecution claim against Defendant Aiellos—and two motions before this Court: (1) Plaintiff's motion for summary judgment and (2) Defendant's cross-motion for summary judgment. The Court will first address Defendant's motion and then turn to Plaintiff's motion.

A. <u>Defendant Aiellos's Cross-Motion For Summary Judgment</u>

In support of his motion for summary judgment, Defendant Aiellos contends that there is no genuine dispute of material fact that he did not maliciously prosecute Plaintiff. (*See* Def. Br. 3-10, Docket Entry No. 234-1). In the alternative, Defendant contends that he is entitled to qualified immunity. (*Id.* at 10-14). The Court addresses each of Defendant's contentions in turn.

1. <u>Whether There is a Genuine Dispute of Material Fact Concerning Defendant Aiellos's Alleged Malicious Prosecution of Plaintiff</u>

Defendant Aiellos contends that there is no genuine dispute of material fact that he did not maliciously prosecute Plaintiff. (*See id.* at 3-10). A plaintiff basing a § 1983 claim on an allegedly malicious prosecution must establish:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in the plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for purposes other than bringing plaintiff to justice; and
> (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Agarwal v. City of Jersey City*, 388 F. App'x 199, 202 (3d Cir. 2010) (quoting *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc)).

Here, it is undisputed that three out of the above five elements are met. First, it is undisputed that Defendant instituted a criminal proceeding against Plaintiff—Defendant filed a criminal complaint against Plaintiff on or about May 24, 2005. (Pl.'s 56.1 Stmt. ¶ 10; Def.'s Resp. 56.1 Stmt. ¶ 10). Second, it is undisputed that by virtue of Plaintiff having been taken into physical custody after the filing of said claim, Plaintiff was deprived of liberty consistent with the concept of seizure. (Pl.'s 56.1 Stmt. ¶ 13; *see* Def.'s 56.1 Stmt. ¶ 35, Docket Entry No. 234-

2).[1] Third, it is undisputed that the criminal proceedings terminated in Plaintiff's favor—Defendant acknowledges this point in his brief. (Pl.'s 56.1 Stmt. ¶ 11; Def. Resp. 56.1 Stmt. ¶ 11; Def. Br. 5). Thus, to prevail on his cross-motion for summary judgment, Defendant must show that Plaintiff has failed to raise a genuine dispute of material fact suggesting that Defendant either (1) initiated the proceeding without probable cause or (2) acted maliciously or for purposes other than bringing Plaintiff to justice.

        a.    Whether Defendant Aiellos Initiated the Proceeding Without Probable Cause

"The proper inquiry in a section 1983 claim based on . . . misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) (citations omitted). Probable cause exists when "at the time of the arrest, the facts and circumstances within the officer's knowledge are 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' " *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In this regard, the Third Circuit has explained that probable cause:

> [I]s a fluid concept—turning on the assessment of probabilities in particular factual context—not readily, or even usually, reduced to a neat set of legal rules. While probable cause to arrest requires more than mere suspicion, the law recognizes that probable cause determinations have to be made on the spot under pressure and do not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands. A common sense approach [must be taken] to the issue of probable cause and a determination as to its existence must be based on the totality of the circumstances.

*Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (internal citations and quotations omitted).

---

[1] *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) ("Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure.").

On May 24, 2005, Defendant Aiellos filed a criminal complaint against Plaintiff alleging violations of N.J.S.A. § 2C:12-1b(9) and N.J.S.A. 2C:39-4a. (Sicheri Decl., Ex. C, Docket Entry No. 234-6). Under N.J.S.A. § 2C:12-1b(9), "[a] person is guilty of aggravated assault if he . . . [k]nowingly, under circumstances manifesting extreme indifference to the value of human life, points or displays a firearm . . . at or in the the direction of a law enforcement officer . . . ." Under N.J.S.A. § 2C:39-4a, "[a]ny person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another" is guilty of possession of a weapon for an unlawful purpose.

Defendant argues that Plaintiff cannot show that Defendant lacked probable cause because "[t]here is no dispute that plaintiff pointed a gun at defendant . . . ." (Def. Br. 9). To the contrary, Plaintiff disputes this fact in a sworn affidavit that states: "plaintiff Donnel Prince denies that on the night of 5/23/05 that defendant Aiellos knocked on my apartment door and announced himself as a police officer, further deny plaintiff opened the door and pointed a handgun at defendant." (Pl.'s Aff. #2 ¶ 1). It is not this Court's role to decide whose account is more credible. *See Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) ("Generally, the question of probable cause in a section 1983 damage suit is one for the jury. This is particularly true where the probable cause determination rests on credibility conflicts.") (internal citations and quotations omitted). Based on Plaintiff's sworn affidavit, a reasonable jury could conclude that Defendant did not knock on Plaintiff's door or announce himself as a police officer prior to the alleged encounter. Based on this same affidavit, a reasonable jury could also conclude that Plaintiff did not point a gun at Defendant. Viewing these facts and the reasonable inferences drawn therefrom in favor of Plaintiff, there is a genuine dispute of material fact as to whether Defendant acted without probable cause in filing the criminal complaint

against Plaintiff. If the jury believes Plaintiff's account of the events that took place on May 23, 2005—namely, that Defendant Aiellos did not announce himself as an officer and that Plaintiff did not point a gun at Defendant—then Defendant may have acted without probable cause in filing the criminal complaint against Plaintiff. *Cf. United States v. Butler*, 405 F. App'x 652, 659-60 (3d Cir. 2010) ("It is undisputed that Butler opened the door voluntarily. . . . [and] pointed a gun at Officer Cruz. At that point . . . Officer Cruz . . . . had probable cause to believe that Butler had committed aggravated assault by pointing a pistol at him . . . ."); *see also United States v. Epps*, 613 F.3d 1093, 1099-1100 (11th Cir. 2010) (finding that Deputy Kent had probable cause to believe that defendant had committed the felonies of aggravated assault and aggravated assault upon a peace officer when, "[a]fter announcing his presence and directing Mr. Epps to stop, Deputy Kent saw Mr. Epps pointing a pistol at him from about ten feet away, which made the officer fear for his own safety."); *see generally Barnes v. Wright*, 449 F.3d 709, 717 (6th Cir. 2006) ("Pointing a gun at an officer in a manner that creates a substantial danger of injury clearly establishes probable cause for the charge of threatening or attempting to intimidate an officer . . . ."); *United States v. Richards*, 937 F.2d 1287, 1290 (7th Cir. 1991) ("[A]t the moment that Richards pointed the gun at officer Creshaw's chest, the two officers had probable cause to arrest him for assaulting a police officer with a dangerous weapon."). The Court next addresses whether Plaintiff can prove that Defendant acted maliciously when all of the facts and their reasonable inferences are considered in the light most favorable to Plaintiff.

    b. <u>Whether Defendant Aiellos Acted Maliciously or For Purposes Other Than Bringing Plaintiff to Justice</u>

To establish a § 1983 malicious prosecution claim, a plaintiff must show that a defendant "acted maliciously or for purposes other than bringing plaintiff to justice . . . ." *Agarwal*, 388 F. App'x at 202 (quoting *Kossler*, 564 F.3d at 186). In New Jersey, malice "is defined as the

8

intentional doing of a wrongful act without just cause or excuse."[2] *LoBiondo v. Schwartz*, 199 N.J. 62, 93-94 (N.J. 2009) (citations and quotations omitted). It is "well-settled" in New Jersey "that malice may be inferred from want of probable cause." *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 395 (N.J. 2009) (citation and quotation omitted). To permit the making of such an inference, however, Plaintiff is required to "produce at least some extrinsic evidence of malice." *Brunson*, 199 N.J. at 396 (citation and quotation omitted).

Defendant Aiellos contends that he did not maliciously file the criminal complaint against Plaintiff and raises two arguments in support of his contention. First, Defendant argues that there is no dispute that Plaintiff pointed a gun at him. (Def. Br. 6). As discussed above, there are issues of fact in dispute as to whether Plaintiff pointed a gun at Defendant. This argument is therefore unavailing.

Second, Defendant argues that there is no dispute that before May 23, 2005, he did not know Plaintiff personally, did not know of Plaintiff, nor did he know anything related to Plaintiff's alleged desire to file an appeal to the Supreme Court of New Jersey in a case involving his former attorneys. (*Id.* at 5). Defendant's argument ignores the possibility that Defendant could have developed malice towards Plaintiff on the date of the incident, May 23, 2005, and that said malice could have motivated Defendant's decision to file a criminal complaint against Plaintiff the following day. *Cf. Lippay*, 996 F.2d at 1503 (noting that a police officer could have malice in the form of ill-will or spite against someone he never met). Having carefully considered the parties' arguments on the element of malice, based on the reasons that follow, the Court concludes that there are issues of fact in dispute as to whether the element of

---

[2] The interpretation of the common law element of malice in a § 1983 malicious prosecution claim is informed by state law. *See Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993) (applying the Pennsylvania definition of malice in a § 1983 malicious prosecution claim).

malice is met. *See generally Brunson*, 199 N.J. at 395-96 (noting that malice may be inferred from the absence of probable cause when a plaintiff produces at least some extrinsic evidence of malice).

As previously held, based on the evidence in the record, a reasonable jury could find that Defendant lacked probable cause in filing the criminal complaint against Plaintiff. Beyond the potential absence of probable cause, Plaintiff has submitted a sworn statement indicating that he had the following exchange with Defendant and four other police officers when they walked by him in the Hackensack Police Station on May 24, 2005:

> I stated to officers I don't know what lies you people have told but you want get away with this, they started laughing as they turned the corner and I overheard a voice state, "listen guys I don't want to be involved in this, I don't want this on my conscience, another voice was heard saying it was to late now he's going down for this, as well someone said there going to be a lawsuit because of this and someone responded by saying who going to believe him, then more laughing was heard

(Pl.'s Aff. #1 ¶ 14(d)). A reasonable jury could infer from Plaintiff's statement in this regard that at least one of the officers was reluctant to be involved in the arrest of Plaintiff because he thought it was improper. Thus, considering this exchange in the light most favorable to Plaintiff, and when viewed in conjunction with the potential absence of probable cause, a reasonable jury could infer that Defendant's decision to file a criminal complaint against Plaintiff was motivated by a purpose other than bringing Plaintiff to justice. *See, e.g., Williams v. City of Chicago*, 733 F.3d 749, 760 (7th Cir. 2013) ("To defeat summary judgment, plaintiff . . . was not required to 'clearly prove' the lack of probable cause or to come forward with evidence that would *require* the court to infer malice. He was required to come forward only with evidence that would *permit* a finding of no probable cause and *permit* a reasonable inference of malice.").

2. <u>Whether Defendant Aiellos is Entitled to Qualified Immunity</u>

10

Defendant Aiellos contends that this Court should in any event grant summary judgment in his favor because he is entitled to qualified immunity. "To obtain qualified immunity in a § 1983 action premised on malicious prosecution, a police officer must show his actions were objectively reasonable under prevailing Fourth Amendment doctrines." *Davis v. Malitzki*, 451 F. App'x 228, 232-33 (3d Cir. 2011) (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). The availability of qualified immunity to an officer hinges on two questions. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The first question—the constitutional question—is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232 (internal citations omitted); *Southerland v. Pa.*, 389 F. App'x 166, 170 (3d Cir. 2010). The second question—the qualified immunity question—is "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citation omitted); *Southerland*, 389 F. App'x at 170. If the answer to either question is no, Defendant is entitled to qualified immunity. *See Davis*, 451 F. App'x at 232 ("If the official can show at least one prong was not met, he will be deemed to meet the standards necessary to qualify for immunity.") (citations omitted). The Court may consider these questions in either order. *Pearson*, 555 U.S. at 236.

As discussed above, Plaintiff has produced evidence, including sworn affidavits, upon which a jury could reasonably conclude that the five elements of his § 1983 malicious prosecution claim are met. Critically, the Court found that there is a genuine dispute of material fact as to whether Defendant acted without probable cause in filing the criminal complaint against Plaintiff. In other words, the Court has concluded that there are material issues of fact in dispute as to whether Defendant's actions—in filing a criminal complaint against Plaintiff—

11

violated Plaintiff's constitutional rights. It naturally follows that the Court cannot determine, as a matter of law, whether a constitutional violation has occurred for purposes of assessing Defendant's entitlement to qualified immunity until such time as the foregoing factual issues are resolved by the jury. For example, based on the evidence in the record, a reasonable jury could agree with Plaintiff's version of the events that took place and thus determine that Defendant fabricated the facts underlying the criminal complaint or otherwise lacked probable cause when initiating the criminal proceeding against Plaintiff. Because a reasonable officer would understand that such conduct violates the clearly established Fourth Amendment right to be free from malicious prosecution, Defendant might not, under those circumstances, be entitled to qualified immunity. *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 820 (E.D. Pa. 2001) ("[T]he right to be free from the fabrication of evidence, falsifying documents, and malicious prosecution is clearly established.") (citing *Orsatti*, 71 F.3d at 484); *cf. United States v. Brown*, 631 F.3d 638, 649 (3d Cir. 2011) ("[T]he idea of a police officer fabricating facts . . . in order to obtain probable cause is quite obviously repugnant to the Fourth Amendment."). Certainly, the Court cannot make this legal determination—which, in this case, hinges on questions of fact—at this time. *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("[W]hen qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.") (citations omitted); *see also Curly v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("[T]he existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue.") (citations omitted). This aspect of Defendant's motion is therefore denied without prejudice to the re-raising of same at the time of trial. *See, e.g., Curley v. Klem*, 499 F.3d 199, 212 n. 12 (3d Cir. 2007) ("When the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may

be permissible to utilize a jury in an advisory capacity . . . but responsibility for answering that ultimate question remains with the court."); *Apata v. Howard*, No. 05-3204, 2008 WL 4372917, *13 (D.N.J. Sept. 23, 2008) ("When key historical facts are disputed, the Court is obliged to defer a decision on qualified immunity until a more appropriate juncture, possibly with the assistance of an advisory jury.").

    B.    <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff moves for summary judgment on his claim of malicious prosecution. The genuine disputes of material fact discussed throughout this opinion—whether Defendant Aiellos knocked on Plaintiff's door and announced himself as a police officer, whether Plaintiff pointed a gun at Defendant, and whether Defendant and his fellow officers had a conversation from which a reasonable jury could infer that Defendant's decision to file a criminal complaint against Plaintiff was motivated by a purpose other than bringing Plaintiff to justice—prevent this Court from granting summary judgment in Plaintiff's favor. When all reasonable inferences are drawn in Defendant's favor, a reasonable jury could agree with Defendant's version of the events that took place and could thus conclude that Defendant acted with probable cause and/or lacked malice in filing the criminal complaint against Plaintiff. Plaintiff's motion is therefore denied.

## IV.   CONCLUSION

For the reasons discussed herein, the Court DENIES Plaintiff's and Defendant's respective motions for summary judgment.

An appropriate Order accompanies this Opinion.

DATED: 20 of December, 2013.

                                                         JOSE L. LINARES
                                                         U.S. DISTRICT JUDGE